**ASAHI GLASS CO., LTD., Plaintiff,**

v.

**TOLEDO ENGINEERING CO., INC., Defendant**

**No. 3:03CV7120.**

United States District Court,
N.D. Ohio,
Western Division.

April 7, 2003.

**840**

Dennis A. Lyle, Fuller & Henry, Toledo, OH, Jeffrey A. Rosenthal, Joshua Rawson, Robert T. Greig, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for Asahi Glass Co. Ltd., Plaintiff.

Marshall A. Bennett, Jr., Marshall & Melhorn, Toledo, OH, Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Toledo Engineering Co., Inc., Defendant.

## ORDER

CARR, District Judge.

Plaintiff Asahi Glass Co. ("Asahi") brings this action against defendant Toledo Engineering Co. ("TECO") claiming misappropriation of trade secrets under Ohio statutory and Ohio common law, unfair competition and unjust enrichment under Ohio common law, and unfair competition under the Lanham Act, 15 U.S.C. § 1126(h). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(2), 1338(a)-(b), and 1367. At a hearing on March 25, 2003, this court orally denied TECO's motion to stay this case pending a parallel arbitration. That motion was denied for the reasons that follow.

## BACKGROUND

Asahi is a Japanese glass manufacturer. TECO, an Ohio corporation based in Toledo, Ohio, makes glass-melting furnaces and glass production equipment. Asahi claims TECO has misappropriated its proprietary float glass technology (the "Asahi know-how"), which is used to design and operate a microfloat bath for producing thin film transistor ("TFT") glass. Asahi claims TECO obtained the technology from Schott Glas ("Schott"), a German glass maker.

In 1992, Asahi granted a limited license to Schott, allowing Schott to use the Asahi know-how to construct a microfloat bath in Germany. Under the license agreement, Schott was not allowed to use the Asahi know-how to produce TFT glass.

Schott is building a German facility for producing TFT glass, scheduled for completion in summer, 2003. Schott has contracted with Tecoglas, Ltd., a United Kingdom corporation, to help build the facility. Tecoglas has contracted with TECO to provide materials to Schott for the facility. This relationship between Schott and TECO has led to Asahi's complaint against TECO.

On May 9, 2002, Asahi began an arbitration ("Schott Arbitration") against Schott under the arbitration rules of the International Chamber of Commerce ("ICC"), alleging violations of the 1992 license and misappropriation of trade secrets based on Schott's alleged unauthorized use of the Asahi know-how to float TFT glass. TECO is not a party to that arbitration.

On May 21, 2002, Asahi notified TECO that Asahi had begun arbitration against Schott, and asked TECO not to obtain or use the Asahi know-how. On June 6, 2002, TECO responded that it was not obtaining or using the Asahi know-how. Asahi continued to believe that TECO had obtained the Asahi know-how and was using it to

design, build, and install float bath equipment for producing TFT glass.

On March 12, 2003, Asahi filed a five-count complaint and request for injunctive relief against TECO, claiming misappropriation of trade secrets under Ohio statutory and Ohio common law, unfair competition and unjust enrichment under Ohio common law, and unfair competition under the Lanham Act, 15 U.S.C. § 1126(h).

Along with its complaint, Asahi filed a motion to expedite discovery, arguing that it is suffering irreparable injury because of TECO's alleged unauthorized use and disclosure of the Asahi know-how. Asahi claimed expedited discovery would provide the evidence Asahi needed to seek preliminary injunctive relief. Asahi argued the discovery was narrowly tailored, and also argued expedited discovery would not burden TECO, because TECO identified and collected many of the relevant documents for the Schott Arbitration discovery.

On March 13, 2003, this court issued an order directing plaintiff to disclose the basis for its assertion of the need to conduct expedited discovery, and directing defendant to inform the court of the current status of shipment of equipment alleged by plaintiff to be in violation of its proprietary rights, by Friday, March 14, 2003. On March 14, 2003, the court directed TECO to comply with plaintiff's expedited discovery requests by April 1, 2003.

On March 19, 2003, Asahi moved for a temporary restraining order, and submitted a proposed expedited discovery order. TECO, meanwhile, filed a motion to stay this action pending the Schott Arbitration.

At a hearing on March 25, 2003, Asahi withdrew its motion for a temporary restraining order. I orally denied TECO's motion to stay, and granted Asahi's expedited discovery order. Counsel for TECO then informed the court that TECO would consider appealing my order denying the stay, immediately divesting this court of jurisdiction and, therefore, preventing its compliance with the discovery order. Counsel for Asahi then informed the court that the appealability of an order denying a motion to stay pending arbitration depends on the grounds upon which the motion is denied.

I withheld this written order denying TECO's motion to stay until counsel submitted briefs on the issue of a possible appeal by TECO of the denial of its motion for a stay pending arbitration. In addition, I desired to resolve a discovery dispute between the parties, who, contrary to my expectations, had been unable to submit an agreed proposed order implementing discovery that I had indicated would be allowed in response to Asahi's motion for expedited discovery. That order has been entered immediately prior to entry of this order.

## DISCUSSION

### I. Appealing the Denial of a Motion to Stay

■ Under 28 U.S.C. § 1291, an appeal ordinarily will not lie until after final judgment has been entered in a case. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 203–04, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). A decision ordinarily is not final unless "it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* at 204, 119 S.Ct. 1915 (quotations and citations omitted).

■ The Federal Arbitration Act, 9 U.S.C. §§ 1–16, reflects a "liberal federal policy favoring arbitration agreements."*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). That federal policy "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Section 3 of the FAA effectuates this policy by favoring arbitration over litigation. It provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In keeping with the federal policy in favor of arbitration, an interlocutory order granting a mandatory stay under § 3 is not appealable, except as otherwise provided in 28 U.S.C. § 1292(b).[1] 9 U.S.C. § 16(b)(1). Section 16 also provides, however, that "[a]n appeal may be taken from an order refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A).

A court must stay an action pursuant to section 3 where the action is brought by a signatory to an arbitration agreement against another signatory to that agreement, on claims subject to that agreement. *See* 9 U.S.C. § 3; *see also Javitch v. First Union Secs., Inc.,* 315 F.3d 619, 624 (6th Cir.2003).

A court has discretion to stay an action brought by a signatory to an arbitration agreement against a nonsignatory to the agreement, based on its inherent powers, and a stay may be appropriate "where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Nederlandse Erts–Tankers-maatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440, 441 (2d Cir.1964). The Supreme Court has stated:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. North Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (citations omitted) (*quoted in Nederlandse,* 339 F.2d at 442).

The circuit courts have issued conflicting rulings on whether a district court's denial of a motion to stay pending arbitration, when brought by a nonsignatory to that arbitration agreement, is an order "refusing a stay of any action under section 3," as contemplated by 9 U.S.C. § 16(a)(1)(A). *Compare Adams v. Georgia Gulf Corp.,* 237 F.3d 538, 541 (5th Cir.2001) (order is not under section 3) *with Hill v. GE Power*

---

1. That section allows for appeal of an interlocutory order, with the permission of the district court and in the discretion of the circuit court, if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and … an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b).

*Systems, Inc.*, 282 F.3d 343, 348 (5th Cir. 2002) (order is under section 3). If the motion for a stay pending arbitration is considered under the court's inherent power to manage its docket, then the denial of that motion is not "under section 3" and the order is not immediately appealable as a final order. 9 U.S.C. § 16(a)(1)(A). If the motion for a stay is considered under the mandatory stay provision at § 3, then the denial of that motion is "under section 3" and subject to an interlocutory appeal. 9 U.S.C. § 16(a)(1)(A).

Asahi signed an arbitration agreement with Schott, and these two parties now are in the Schott Arbitration before the ICC. Asahi separately brought an action against TECO, a nonsignatory to that agreement, and TECO moved to stay. TECO argued that I should stay this case under the FAA's mandatory stay provision at § 3, or, alternatively, at this court's discretion. On March 25, 2003, I orally denied the motion to stay, for the following reasons.

The Sixth Circuit has not yet issued an opinion on whether a district court may, under § 3 of the FAA, grant or deny a nonsignatory's motion to stay proceedings pending a related arbitration. After considering the authority from other circuits, I conclude that I may not consider TECO's motion to stay under § 3.

TECO also urges me, in the alternative, to grant its motion to stay in order to exercise discretionary control over my docket and avoid any possible risk of inconsistency between the arbitration and proceedings before me. I decline to do so.

I am persuaded, moreover, that TECO cannot appeal the denial of its motion, because such appeal can be grounded only in § 3—of which TECO cannot avail itself.

## II. TECO Cannot Invoke § 3

■ TECO is not a party to the arbitration agreement between Asahi and Schott. Circuit courts in other circuits have rejected nonsignatories' attempts to invoke the mandatory stay provision of § 3 in motions to stay. *See AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir.2001) ("[A]rbitration under the Federal Arbitration Act is a mater of consent, not coercion. . . . Therefore, [nonsignatory defendant] is not entitled to a mandatory stay under section 3 of the Act.") (internal citations omitted); *Adams*, 237 F.3d at 541 ("[Defendant's] status as a non-party to the arbitration agreement is not in dispute. Therefore, we find that § 3 does not apply[.]"); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir.1996) ("Although not expressly so limited, section 3 assumes and the case law holds that the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement, as must be the person sought to be stayed."); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 748 (2d Cir.1991) ("Section 16 of the F.A.A. does not, however, apply to this case, because the issues involved in the court action are not referable to arbitration under any agreement").

The Seventh Circuit in *IDS* noted that § 3 allows a stay of "any issue referable to arbitration under an agreement in writing for such arbitration," thus appearing to prevent § 3's application to suits against nonsignatories that are "substantively identical to the issues in the other suits, but . . . not referable to arbitration 'under an agreement in writing for such arbitration,' because there is no such agreement between these parties." 103 F.3d at 529.[2]

---

**2.** Additionally, the fact that the nonsignatory was in privity with a signatory to the agreement was not enough to allow the nonsignatory to invoke § 3 in *IDS*. 103 F.3d at 529. TECO should not be allowed to invoke § 3 merely because Schott, a signatory to the agreement, is in contractual privity with TECO and has agreed to indemnify TECO in this case.

The factual relationship between the Asahi/Schott dispute and the Asahi/TECO dispute is of no consequence, according to the reasoning in *IDS*, because the Asahi/TECO dispute is not "referable to arbitration *under an agreement in writing* [.]" 9 U.S.C. § 3 (emphasis added).

TECO's motion to stay urges this court to allow it to invoke § 3, based on the Fifth Circuit's decisions in *Hill*, 282 F.3d at 348; *Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir.2000); and *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999). In *Harvey* and *Subway*, the Fifth Circuit applied the § 3 mandatory stay provision to nonsignatories "because the issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration." *Adams*, 237 F.3d at 540.[3] In *Hill*, the Fifth Circuit more explicitly ruled that § 3 extended to nonsignatories, by reasoning that any nonsignatory granted a discretionary stay under the court's inherent powers also must be entitled to that stay under § 3:

> A suit against a nonsignatory that is based on the same operative facts and is inherently inseparable from the claims against a signatory will always contain 'issue(s) referable to arbitration under an agreement in writing,' and thus will satisfy the requirements of Section 16(a)(1).

282 F.3d at 347 (citing 9 U.S.C. § 3).

I denied TECO's motion to stay at the March 25, 2003, hearing after finding that this case was separable from the Schott Arbitration. Even if I believed that *Hill*'s interpretation of § 3 was acceptable, this case still would not contain issues referable to arbitration under an agreement in writing. I also am not persuaded by the other cases TECO cites in support of its motion to stay under § 3. *See Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir.1983) (staying action against nonparty based on § 3's mandatory stay provision; court found persuasive the statute's language allowing stay of "*any* issue referable to arbitration" while noting that, in any event, it was permitted to issue discretionary stay).

The weight of recent case law, as well as the plain language of the statute itself,[4] supports Asahi's argument that TECO should not be able to invoke § 3 of the FAA. This conclusion also is supported by equitable considerations: TECO did not bargain for the arbitration agreement; accordingly, it should not be able to reap the benefits of the interlocutory appeal provision at 9 U.S.C. § 16(a)(1)(A). TECO's motion to stay these proceedings pending the outcome of the Schott Arbitration is not properly considered under 9 U.S.C. § 3.

### III. TECO's Motion for Discretionary Stay Is Denied

Even though a nonsignatory may not invoke § 3 in moving to stay an action pending arbitration, a district court has discretion to stay third party litigation involving common questions of fact within the scope of an arbitration agreement to which the third party is not a signatory.

---

**3.** While the Fifth Circuit panel deciding *Adams* did not disavow *Subway* and *Harvey*, it limited them, stating that those cases were based on "exceptional circumstances" and that they "muddied" the "clarity of [the] rule denying the applicability of the mandatory stay provision to non-parties." *Adams*, 237 F.3d at 540–41.

**4.** As noted, Section 3 provides for a stay when an issue is referable to arbitration "under an agreement in writing[.]" 9 U.S.C. § 3. It also specifies that the stay shall issue "providing the applicant for the stay is not in default in proceeding with such arbitration." *Id.* The statute clearly contemplates that the applicant for the stay will be subject to the arbitration agreement.

*AgGrow Oils,* 242 F.3d at 782; *see also IDS,* 103 F.3d at 530 (though only a party to an arbitration is entitled to a § 3 stay, nonsignatories may be entitled to a stay "under the doctrine of abstention applicable to parallel proceedings in judicial and arbitral fora."); *Nederlandse,* 339 F.2d at 441 (same).

 The movant bears a heavy burden of showing necessity for the discretionary stay, and the stay should not prejudice the non-moving litigant unduly. *Sierra Rutile,* 937 F.2d at 750. After a lengthy hearing on the merits of TECO's motion to stay on March 25, 2003, I was not persuaded that it is necessary to issue a discretionary stay in the proceedings in this case. TECO has not shown a risk of prejudice to the Schott Arbitration or a risk of inconsistent rulings if this case proceeds, because the arbitration is scheduled to be finished this summer. Asahi, though, has shown that it will be prejudiced if this case is stayed, because it has a compelling need for the expedited discovery order it has requested and received.

In addition, and most importantly, the interests that Asahi seeks to protect in this suit can only be protected here, and cannot be protected in the arbitration, even if that proceeding is resolved entirely in Asahi's favor. TECO's motion for a discretionary stay of the proceedings in this case shall be denied. Though both this case and the arbitration arise from Asahi's fear that its proprietary information has been disclosed improperly, further disclosure by parties other than Schott can only be avoided (assuming that TECO possesses such information—which is the focus of Asahi's motion for expedited discovery) in these proceedings. To stay these proceedings would foreclose Asahi's ability to protect interests that its represents are vital. The risks to Asahi from staying these proceedings appear to outweigh substantially the inconvenience to TECO from allowing this case to proceed concurrently with the arbitration.

## Conclusion

TECO's motion to stay these proceedings pending the outcome of the Schott Arbitration is not properly considered under 9 U.S.C. § 3. The motion is denied, based on this court's discretionary powers. Consequently, this order is not a final order, and TECO has no right to appeal under 9 U.S.C. § 16. This court retains jurisdiction over this case, and Asahi's expedited discovery request, as described at the March 25, 2003, hearing in this court, should be fulfilled.

It is, therefore,

ORDERED THAT TECO's motion to stay these proceedings pending the outcome of the Schott Arbitration be, and the same hereby is denied, based on this court's discretionary powers;.

So ordered.