Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 16, 2003       Decided November 21, 2003

No. 02-7118

DSMC INCORPORATED,
APPELLEE

v.

CONVERA CORPORATION,
APPELLEE

NGT LIBRARY, INCORPORATED,
APPELLANT

————

Consolidated with
02-7119

————

Appeals from the United States District Court
for the District of Columbia
(No. 01cv02284)

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Anthony Herman* argued the cause for Convera Corporation and NGT Library, Incorporated. With him on the briefs were *James M. Garland* and *James S. Kurz*.

*Peter H. Gunst* argued the cause for appellee DSMC Incorporated. With him on the brief was *Julie R. Rubin*.

Before: HENDERSON, TATEL, and ROBERTS, *Circuit Judges*.

ROBERTS, *Circuit Judge*: In these consolidated appeals, National Geographic Television Library, Incorporated (NGTL) and Convera Corporation (Convera) (collectively "appellants") seek interlocutory review of a district court order denying (1) Convera's motion to compel arbitration and (2) NGTL's motion to stay all litigation pending arbitration. NGTL and Convera invoke Section 16 of the Federal Arbitration Act (FAA), 9 U.S.C. § 16, which permits interlocutory appeal of orders denying motions to stay litigation under Section 3 of the FAA and of orders denying motions to compel arbitration under Section 4 of the Act. We conclude that the underlying motions were not under Sections 3 or 4 of the FAA, because they did not seek to stay litigation or compel arbitration between parties subject to a written agreement to arbitrate. The appeals accordingly do not fall within Section 16, and we dismiss them for lack of jurisdiction.

## I.  Background

### A.  Factual History

NGTL is a part of the National Geographic Society responsible for managing, preserving, and distributing the many hours of archive film footage produced by National Geographic Television. Appellee DSMC Incorporated (DSMC) uses proprietary software, architecture, and techniques to provide digitizing, cataloguing, archiving, and hosting services to media organizations with extensive audio and video libraries. In September 2000, NGTL entered into a contract with DSMC under which DSMC agreed (1) to digitize, catalogue, and encode two thousand hours of NGTL's video material; (2) to create a database for NGTL with archival and retrieval software; and (3) to provide website hosting services to

NGTL, allowing database users to access the digitized footage from desktop computers. The contract, which contained a confidentiality provision to protect proprietary material, specified that DSMC would host NGTL's website until July 2001, at which time NGTL had the option to extend the hosting term. The contract also contained an arbitration clause: "Any dispute arising out of or in connection with this Agreement including any question regarding its existence, validity or termination, that can not be resolved through mediation . . . shall be referred to and finally resolved by arbitration under the Rules of the American Arbitration Association." Integration Services Agreement Between NGTL and DSMC (Sept. 13, 2000) ¶ 15c.

NGTL became dissatisfied with DSMC's performance and, on July 20, 2001, entered into a contract with Convera — a direct competitor of DSMC — to perform many of the same functions previously performed by DSMC. To facilitate the switch, NGTL provided Convera with a copy of NGTL's database — created by DSMC — and gave Convera a username and password to access NGTL's website.

## B. Procedural History

DSMC claims that NGTL breached the September 2000 contract and unlawfully disclosed DSMC's trade secrets to Convera when it provided Convera unauthorized access to the software, architecture, and functionality DSMC employed in providing services to NGTL. On October 31, 2001, DSMC referred its claims against NGTL to arbitration, pursuant to the contract's arbitration clause. The next day, DSMC filed suit against Convera in district court. In its complaint, DSMC alleged that Convera (1) misappropriated DSMC's trade secrets, (2) conspired with NGTL to misappropriate trade secrets, and (3) was unjustly enriched through its misappropriation of DSMC's trade secrets. DSMC later dropped the unjust enrichment claim but added claims of copyright infringement. Convera responded by filing a motion to dismiss for failure to state a claim and a motion to dismiss or transfer on venue grounds. The parties com-

menced discovery, with Convera deposing DSMC's corporate designee and DSMC producing thousands of documents.

Meanwhile, on December 17, 2001, NGTL filed motions to intervene and to stay the litigation between DSMC and Convera pending resolution of the arbitration proceeding between DSMC and NGTL. NGTL sought to intervene in the lawsuit between DSMC and Convera for the sole purpose of seeking the stay. NGTL claimed that the parallel proceedings — the DSMC/NGTL arbitration and the DSMC/Convera lawsuit — contained the same issues, and that the litigation threatened to undermine the arbitration. Convera consented to the motion to stay; DSMC opposed it. On April 9, 2002, the district court heard oral argument on all pending motions. Following the hearing, Convera filed a motion to compel DSMC to arbitrate its claims against Convera. Although DSMC and Convera were not parties to any agreement to arbitrate, Convera argued that equitable estoppel and the federal policy favoring arbitration supported its motion.

By order dated August 29, 2002, the district court denied NGTL's motion to intervene for the limited purpose of seeking a stay, but allowed NGTL to intervene for all purposes. The district court then denied NGTL's motion to stay the litigation. Turning to Convera's motions, the district court denied the motion to dismiss for failure to state a claim and the venue motion. Finally, the district court denied Convera's motion to compel arbitration on the basis of equitable estoppel.

NGTL appeals the district court's denial of its motion to stay the litigation pending completion of arbitration. Convera appeals the district court's denial of its motion to compel DSMC to arbitrate. We consolidated the appeals.

## II.  Analysis

"Jurisdiction is, of necessity, the first issue for an Article III court." *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981). Generally, this court has appellate jurisdiction over only "final decisions" of the district courts. 28 U.S.C. § 1291; *Bombardier Corp. v. National R.R. Passen-*

*ger Corp.*, 333 F.3d 250, 253 (D.C. Cir. 2003). The Supreme Court "long has stated that as a general rule a district court's decision is appealable under [§ 1291] only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). A denial of a motion to compel arbitration obviously fails to end the litigation on the merits and is not a final judgment. A denial of a motion to stay litigation pending arbitration is just as clearly not a final decision under the final judgment rule. *See Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 541–42 (5th Cir. 2001).

This court also lacks jurisdiction to hear the appeals under 28 U.S.C. § 1292(a)(1). In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. at 287, the Supreme Court held that orders denying stays of litigation are not appealable as interlocutory orders denying injunctions under Section 1292(a)(1). NGTL's appeal accordingly cannot be based on that provision. And this court has long held that orders denying motions to compel arbitration are not appealable under Section 1292(a)(1), *see John Thompson Beacon Windows, Ltd. v. Ferro, Inc.*, 232 F.2d 366, 368–69 (D.C. Cir. 1956), so that provision does not help Convera, either.

That leaves Section 16 of the FAA. Section 16 provides for interlocutory appeals from an order "refusing a stay of any action under section 3 of this title," 9 U.S.C. § 16(a)(1)(A), and from an order "denying a petition under section 4 of this title to order arbitration," *id.* § 16(a)(1)(B). The question thus becomes whether Convera's motion was under Section 4 of the FAA and whether NGTL's motion was under Section 3.

**A.  Convera's Motion to Compel**

Under Section 4, "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Nothing about Convera's motion to compel suggests that it was filed pursuant to Section 4. Convera did not cite Section 4 in the motion, and did not comply with the requirement in Section 4 that five days' notice be given of the motion to compel. Convera's contention that DSMC should be compelled to arbitrate its claims against Convera was not based on any alleged failure of DSMC "to arbitrate under a written agreement for arbitration" — the only such agreement was between DSMC and NGTL, and Convera acknowledged that "[t]he DSMC[ ] claims against National Geographic are already in arbitration." Convera's Mem. Supp. Mot. to Compel, at 1. Nor did Convera seek an order directing that arbitration "proceed in the manner provided for in such agreement," 9 U.S.C. § 4 — there was no such agreement between Convera and DSMC. Instead, Convera's motion to compel was expressly based on principles of equitable estoppel. Convera contended that the relation between DSMC's claims against it and DSMC's claims against NGTL was such that DSMC should be compelled to arbitrate the former along with the latter.

Section 4, however, applies only to an "alleged failure . . . to arbitrate under a written agreement for arbitration" — not an alleged failure to arbitrate when principles of equitable estoppel indicate that you should. Convera argued that the DSMC/NGTL contract "satisfies the written arbitration agreement requirement," Convera's Mem. Supp. Mot. to Compel, at 6, but Section 4 does not merely require that there be a written agreement somewhere in the picture. It requires that the motion to compel be based on an alleged failure to arbitrate under that written agreement. Convera's motion to compel is not based on any alleged failure by DSMC to arbitrate under the only written agreement at issue here — the one between DSMC and NGTL. The motion is instead based on an effort to expand DSMC's obligation *beyond* the terms of that written agreement pursuant to principles of equitable estoppel. As appellants acknowledge, "[t]he doctrine of equitable estoppel . . . by definition applies where there is no written contract between the parties. . . ." Reply Br. at 6.

Convera recognizes that there is no precedent from this court compelling a party to an arbitration agreement to arbitrate with a non-signatory on the basis of equitable estoppel, *see* Appellants' Br. at 22, but cites cases from other circuits that have done so. Those cases typically did not address jurisdiction under Section 16 of the FAA, but instead simply proceeded directly to consider the propriety of compelling signatories to arbitrate with non-signatories. We need not and do not decide whether such an effort can ever succeed. What we do decide is that an effort to compel arbitration in such circumstances on the basis of equitable estoppel does not fall within Section 4 of the FAA. Accordingly, we hold that this court has no jurisdiction under Section 16(a)(1)(B) to hear an appeal of an order denying a motion to compel arbitration between parties *not* under a written agreement to arbitrate.

In doing so we are mindful that "Section 16 is a limited grant of jurisdiction," that "[i]n general, statutes authorizing appeals should be narrowly construed," and that this is particularly true with respect to statutes allowing interlocutory appeals. *Bombardier*, 333 F.3d at 253. We are also cognizant that jurisdictional rules should be, to the extent possible, clear, predictable, bright-line rules that can be applied to determine jurisdiction with a fair degree of certainty from the outset. *See*, *e.g.*, *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 547 (1995) (rejecting multi-factor jurisdictional test in part because it "would be hard to apply, jettisoning relative predictability for the open-ended rough-and-tumble of factors"). Asking whether the parties are signatories to a written agreement to arbitrate satisfies these criteria. On the other hand, the application of equitable estoppel — if permitted in this context — requires a multi-factor factual and legal inquiry to determine whether the issues to be litigated by the non-signatory and signatory are sufficiently intertwined with the issues subject to arbitration. That type of analysis, in turn, would require this court to delve deeply into the merits of a case before even deciding whether we had interlocutory appellate jurisdiction — an unattractive prospect.

**B. NGTL's Motion to Stay**

NGTL argues that this court has jurisdiction to hear its appeal of the district court's denial of its motion to stay the litigation pending arbitration under Section 16(a)(1)(A), because that provision authorizes interlocutory appeals from the denial of stay motions under Section 3 of the FAA. Section 3 states that district courts *shall* stay litigation until the completion of arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . an agreement [in writing] . . . ." 9 U.S.C. § 3. NGTL contends that the arbitration agreement in its contract with DSMC allows it to seek to stay this action under Section 3, because the action involves an issue that is referable to arbitration under a written agreement. *See* Reply Br. at 26. We disagree.

In *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996), the Seventh Circuit faced a similar claim. Two defendants were parties to an arbitration agreement with the plaintiff; two defendants were not. The defendants without an arbitration agreement appealed from the district court's denial of their motion to stay the litigation pending arbitration. The court held that there was no jurisdiction under Section 16(a)(1) to hear the appeal because the issues involved were not referable to arbitration "under an agreement in writing" pursuant to Section 3, even though largely indistinguishable issues involving the other two defendants were subject to arbitration. *See id.* at 530.

Similarly in this case, NGTL — which does have an arbitration agreement with DSMC — seeks to stay an action between parties that have no such agreement. That this is the focus of NGTL's effort is clear from its original desire to intervene in litigation to which it was not a party solely for the purpose of seeking to stay that litigation. There are no issues referable to arbitration under an agreement in writing between Convera and DSMC because there is no arbitration agreement between those two parties. Even assuming that the issues involved in the DSMC/Convera litigation and the DSMC/NGTL arbitration are identical, intertwined, closely

related, whatever — a matter of hot dispute — the litigation may not be stayed under Section 3 because the issues in the litigation are not "referable to arbitration under an agreement." *See Adams*, 237 F.3d at 540 ("The denial of the benefit of the mandatory stay provision to non-signatories has been grounded in the recognition that the non-signatory's litigation with an arbitrating party cannot be referred to arbitration."); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 748 (2d Cir. 1991) (holding Section 16 does not provide jurisdiction when the parties to an action had no agreement to arbitrate, because no issue was referable to arbitration under an agreement pursuant to Section 3). As the Seventh Circuit explained in *IDS Life*, "[t]he issues in the suits against the nonmembers may be substantively related to the issues in the other suits, but they are not referable to arbitration 'under an agreement in writing for such arbitration,' because there is no such agreement between these parties . . . . The statute has no application to 'issues' in cases between different parties." 103 F.3d at 529.

NGTL *is* a signatory, to be sure, but its issues with DSMC are already subject to arbitration. There is no arbitration agreement between DSMC and Convera, and so Section 3 does not apply in this case. District courts may certainly consider stays in circumstances such as these as a matter of discretionary control of their docket. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *IDS Life*, 103 F.3d at 530. We simply conclude that the mandatory stay provision of Section 3 does not apply to litigation involving parties not subject to a written arbitration agreement, and therefore hold that this court lacks jurisdiction under Section 16(a)(1)(A) to hear NGTL's appeal.

### III. Conclusion

We dismiss the appeals for lack of jurisdiction.